IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALVETTE L. R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-CV-556-MTS |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Alvette L. R. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On September 10, 2020, Plaintiff filed an application for Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.* (R. 19). She alleged an inability to work beginning on June 2, 2017, due to limitations resulting from diabetes, neuropathy, an inability to see at night, high blood pressure, an inability to stand up, swollen feet, balancing issues, an inability to walk for long periods of time, carpal tunnel syndrome in both hands, and mobility limitations due to right arm/shoulder blade pain. (R. 237, 240). Plaintiff was forty-five years old at the time of the ALJ's decision. (R. 34). She has at least a high school education and no past relevant work. *Id.*

Plaintiff's application was denied both initially and upon reconsideration. (R. 74–104).

3

ALJ Joseph R. Doyle conducted an administrative hearing on February 1, 2022. (R. 41–68). The hearing was held via teleconference pursuant to COVID-19 procedures. (R. 19, 141–42). ALJ Doyle issued a decision on February 15, 2022, denying benefits and finding Plaintiff not disabled. (R. 16–40). Plaintiff sought review by the Appeals Council, which was denied on September 14, 2022. (R. 5–10). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 10, 2020. (R. 21). At step two, he found Plaintiff suffered from the severe impairments of learning disorder, diabetes mellitus with neuropathy, lumbar degenerative disc disease with sciatica, and hypertension. (R. 22). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 25). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work" with the following additional limitations:

> [E]xcept could only occasionally climb ladders, ropes or scaffolds; could only occasionally climb stairs or ramps; could only occasionally engage in balance on uneven surfaces and would be limited to the performance of simple, routine and repetitive tasks.

(R. 28).

At step four, the ALJ determined Plaintiff had no past relevant work. (R.34). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of office helper, garment sorter, and mail clerk, all of which he found existed in significant numbers in the national economy. (R. 34–35). As a result, the ALJ found Plaintiff had not been under a disability from September 10, 2020, through the date of

decision. (R. 35).

## Errors Alleged for Review

Generally, Plaintiff alleges two errors for review: 1) the ALJ failed at steps two and three of the evaluation process; and 2) the ALJ failed at steps four and five of the evaluation process. (Docket No. 8 at 3–4). In response, the Commissioner argues the ALJ's decision is supported by substantial evidence and therefore should be upheld. (Docket No. 13 at 3).

## The ALJ's Step Two and Step Three Determinations

Plaintiff asserts several sub-arguments under the umbrella of her steps two and three arguments. (Docket No. 8 at 4–5). First, she argues the ALJ was impermissibly inconsistent when, at step two, he found Plaintiff's learning disorder was a severe impairment, but failed to consider said impairment at step three. *Id.* at 4. Second, Plaintiff appears to take issue with the ALJ's "paragraph B" determination, arguing the ALJ made two such determinations without specifying which "was the appropriate, applicable one in this case." *Id.* Third, Plaintiff argues the ALJ erred by failing to consider Listing 12.05. *Id.* at 2, 5. Fourth, Plaintiff contends the ALJ was impermissibly inconsistent when he found Plaintiff's high blood pressure to be severe despite finding her other heart ailments to be non-severe. *Id.* at 5.

At step two, Plaintiff bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).[2] An impairment which warrants disability benefits is

---

[2] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. Examples of basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985).

one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It also "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams*, 844 F.2d at 750. Consequently, a claimant's testimony alone is insufficient to establish a severe impairment. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]").

The burden of showing a severe impairment is *de minimis*, yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070–71 (10th Cir. 2007) (quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)). An ALJ "must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) (quotation omitted). If the claimant is unable to make a *de minimus* showing of medical severity, then the disability determination process ends, and she is determined not disabled. *Williams*, 844 F.2d at 751.

Crucially, when considering the evidence at step two, "[t]he record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "In addition to discussing the evidence

6

supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)).

### A. Learning Disorder at Steps Two and Three

Plaintiff's first argument that the ALJ's findings regarding her learning disorder are inconsistent is unavailing. (Docket No. 8 at 4). The ALJ found Plaintiff's learning disorder to be a severe impairment at step two. (R. 22). He then discussed Plaintiff's non-severe impairments, including her non-severe mental impairments of mood and anxiety disorders. (R. 24). In discussing the mood and anxiety disorders, the ALJ conducted a "paragraph B" analysis, finding that Plaintiff had no limitations in understanding, remembering, or applying information, interacting with others, or concentrating, persisting, or maintaining pace. (R. 24–25). However, he found that Plaintiff had a mild limitation in adapting or managing oneself as a result of her mood and anxiety disorders. (R. 25). The ALJ then concluded his step two discussion by stating that, "while the claimant has non-severe mental impairments, she also has a severe mental impairment, learning disorder, addressed later in this decision." *Id.* During his step three discussion, the ALJ considered Plaintiff's severe and non-severe mental impairments both singly and in combination. In doing so, the ALJ concluded Plaintiff had a moderate limitation in understanding, remembering, or applying information; no limitation in interacting with others; and mild limitations in concentrating, persisting, or maintaining pace, and adapting or managing oneself. (R. 26–27).

Plaintiff has failed to sufficiently articulate how the ALJ's findings were inconsistent. The

7

ALJ's first "paragraph B" assessment was, as specified by the ALJ himself, limited to Plaintiff's non-severe mood and anxiety disorders. (R. 24) ("Notably, the following discussion pertains only to the claimant's mental functioning as it relates to her mood and anxiety disorders."). The ALJ's first assessment of only one mild "paragraph B" limitation is consistent with his finding that the mood and anxiety disorders were non-severe. When considering Plaintiff's non-severe mood and anxiety disorders and her severe learning disorder in combination, the ALJ consequently assessed the "paragraph B" criteria differently, finding more pronounced "paragraph B" limitations.

Further, the ALJ thoroughly discussed Plaintiff's learning disorder at step four, concluding that Plaintiff "is mentally capable of performing simple, routine and repetitive tasks," noting that her "mental status observations, at least since the application date, have been grossly normal." (R. 32); *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). Additionally, the ALJ accounted for Plaintiff's mental limitations by including non-exertional limitations in the RFC that limited her to unskilled work. (R. 28, 35); *see Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[I]n this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace.").

### B. "Paragraph B" Determinations

The Court is likewise unpersuaded by Plaintiff's second argument that the ALJ erred in failing to specify which "paragraph B" determination "was the appropriate, applicable one in this case." (Docket No. 8 at 4). As discussed above, the ALJ prefaced his step-two discussion of the "paragraph B" criteria in regard to Plaintiff's non-severe mood and anxiety disorders with the

8

caveat that "the following discussion pertains only to the claimant's mental functioning as it relates to her mood and anxiety disorders." (R. 24). Then, under step three, the ALJ considered Plaintiff's mental impairments, singly and in combination, finding that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments pursuant to 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (R. 25). In doing so, the ALJ conducted another "paragraph B" assessment in which he accounted for both Plaintiff's severe learning disorder and her non-severe mood and anxiety disorders, finding that the criteria were not satisfied. (R. 26–27).

Plaintiff is correct in that, when considering the evidence at step two, "[t]he record must demonstrate that the ALJ considered all the evidence," *Clifton*, 79 F.3d at 1009–10, including both severe and non-severe impairments. However, "an ALJ is not required to discuss every piece of evidence." *Id.* Moreover, any error committed by the ALJ at step two is harmless because he proceeded through all three remaining steps, suggesting that Plaintiff's benefits could not be properly denied at step two. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

C. **Listing 12.05**

Plaintiff's next argument that the ALJ erred by not mentioning or applying Listing 12.05, which Plaintiff contends is the correct listing to apply for a learning disorder, is unconvincing. (Docket No. 8 at 2, 5). Although Defendant does not address this assertion in his response, Plaintiff cites no caselaw to support her argument, nor does she direct the Court to any evidence in the record requiring the application of Listing 12.05. Importantly, Plaintiff fails to argue that her

9

condition equals Listing 12.05 at all. *See Dettmer v. Berryhill*, No. 17-2296-JWL, 2018 WL 3304521, *5 (D. Kan. July 5, 2018) ("Plaintiff argues that the ALJ should have considered whether her condition medically equals Listing 12.05, but notably, she does not argue that her condition in fact equals that Listing. This distinction is significant to the court's resolution of this issue.").

Assuming, *arguendo*, Plaintiff asserted that she does meet Listing 12.05, "the claimant has the burden at step three of demonstrating, through medical evidence, that her impairments 'meet *all* of the specified medical criteria contained in a particular listing.'" *A.C. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-00920-SBP, 2023 WL 8455204, at *11 (D. Colo. Dec. 6, 2023) (emphasis in original) (quoting *Sullivan*, 493 U.S. at 530). Furthermore, "'[a]n impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify' to meet or equal the listing." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Intellectual disorder, Listing 12.05, "is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in [the claimant's] adaptive functioning." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00B4a. Manifestations of Listing 12.05 "may be described in the evidence as intellectual disability, intellectual developmental disorder, or historically used terms such as 'mental retardation.'" *Id.* § 12.00B4b. Conversely, Listing 12.11, neurodevelopmental disorders, includes learning disorders and "are characterized by onset during the developmental period, that is, during childhood or adolescence . . . . Symptoms and signs may include, but are not limited to, underlying abnormalities in cognitive processing (for example, deficits in learning and applying verbal or nonverbal information, visual perception, memory, or a combination of these); deficits in attention or impulse control; low frustration tolerance; excessive or poorly planned motor

activity; difficulty with organizing (time, space, materials, or tasks); repeated accidental injury; and deficits in social skills." *Id.* § 12.00B9a, b.

On May 28, 2015, Nancy F. Barton, Ph.D., conducted a mental status evaluation, finding Plaintiff to be of low average to average intellectual ability. (R. 301). Dr. Barton's evaluation noted that Plaintiff's "[l]earning problems have always been present in reading and writing," and that "[s]he received Special Education services while in school." (R. 299). Dr. Barton's diagnostic impressions included "Learning Disorder, Not Otherwise Specified history of" and "Borderline Intellectual Functioning rule out." (R. 303). On February 5, 2018, River J. Smith, Ph.D., conducted a consultative evaluation and reported Plaintiff's intellectual functioning as below average to average. (R. 309). However, Dr. Smith's DSM V Diagnostic Impression did not include an intellectual disorder, but only a "[l]earning [d]isorder by history." (R. 310). Dr. Smith also noted Plaintiff reported receiving special education services in school; graduated high school without delay; and earned a technical degree to become a medical assistant. (R. 308–09).

Although the ALJ never explicitly referenced Listing 12.05, he discussed Drs. Barton and Smith's reports, noting the historical evidence supporting Plaintiff's learning disorder. (R. 26–27). He also mentioned that Plaintiff had some impairment in recall; was unable to identify how many nickels were in $1.15; was unable to explain the meaning of a cited proverb; struggled to write a basic sentence; could not spell "world" backwards; and was unable to repeat a sentence exactly as it was read to her. (R. 26, 27). However, the ALJ noted that Plaintiff had not received any additional cognitive functioning evaluations since 2018 and that "the record, since the 2020 application date, generally lacks observations of inattention, distraction or significant cognitive slowness." *Id.* Further, Plaintiff has not identified, and the Court has not located, any sort of intelligence testing or full-scale I.Q. score in the record supporting the application of Listing 12.05.

11

(*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00H). Based on the record and the ALJ's decision, the Court can readily ascertain that the ALJ was aware of Plaintiff's intellectual abilities and considered whether she was intellectually impaired.

Additionally, the Court has identified no authority, and Plaintiff provides none, supporting the assertion that the ALJ is required to "explicitly reference each listing related to a claimant's severe impairments." *Jensen v. Berryhill*, No. 2:14-CV-00892-DB-DBP, 2018 WL 1617865, at *4 (D. Utah Mar. 5, 2018), *report and recommendation adopted*, No. 2:14-CV-892-DB-DBP, 2018 WL 1626103 (D. Utah Mar. 30, 2018). Regardless, "Tenth Circuit precedent counsels against 'remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review.'" *A.C.*, 2023 WL 8455204, at *12 (quoting *Fischer-Ross*, 431 F.3d at 734).

### D. Hypertension & Other Heart Ailments

Plaintiff argues the ALJ erred by "never really explain[ing] how Claimant's heart impairments can be both severe and non-severe at the same time." (Docket No. 8 at 5). At step two, the ALJ found Plaintiff's hypertension to be a severe impairment, as it significantly limited Plaintiff's ability to perform basic work activities. (R. 22). The ALJ determined Plaintiff also had several non-severe cardiac issues which had "not been shown to more than minimally interfere with the ability to engage in work-related activities for 12-consecutive months since the 2020 application date." *Id.* At step three, the ALJ determined, after considering Listing 4.00, that the record did not support a finding that Plaintiff's hypertension medically equaled a listed impairment. (R. 26).

The Court does not believe an unresolved inconsistency exists here. Hypertension, or high blood pressure, is a distinct health condition; not all heart ailments are one and the same. The ALJ

discussed Plaintiff's various tests, normal and abnormal, some of which showed abnormalities such as tachycardia, atrial enlargement, and hyperglycemia. (R. 22). Ultimately, the ALJ concluded these cardiac issues were non-severe because Plaintiff's "condition is being addressed with medication" and "[s]he has not required surgery or lengthy hospitalization." *Id.* Thus, the ALJ made a distinction between Plaintiff's hypertension and her other cardiac issues because, according to the ALJ, the record reflected and required that such a distinction be made. The Court cannot and will not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias*, 933 F.2d at 800.

### The ALJ's Step Four and Step Five Determinations

Plaintiff's last argument is that the ALJ erred by not accounting for certain non-severe impairments in the RFC, in addition to not including certain limitations in his hypotheticals to the VE.[3] (Docket No. 8 at 5–7). When assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments . . . including [] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC].")). Further, "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity [at step two] as a substitute for a proper RFC analysis." *Id.* (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)).

---

[3] In her Opening Brief, Plaintiff's argument included the non-severe impairments of carpal tunnel syndrome and right arm and shoulder pain. However, Plaintiff conceded in her Reply that "[c]ounsel for the defense is correct that the ALJ termed the right shoulder/arm problem non-medically determinable, so there is no reaching limitation to be attached to the RFC." (Docket 14 at 3). Thus, the Court will limit its analysis of Plaintiff's argument as to the allegations of carpal tunnel syndrome.

13

At step two, the ALJ found Plaintiff's right-hand carpal tunnel syndrome to be a non-severe impairment, explaining that Plaintiff's records reflected that her grip strength and range of motion were normal and that they "generally fail[ed] to reflect difficulties moving or manipulating objects with the hands." (R. 22). He also noted the lack of corroborating test results for a diagnosis of carpal tunnel syndrome in Plaintiff's right hand. *Id.* As to Plaintiff's left-hand carpal tunnel syndrome, the ALJ found it was not medically established by the record. *Id.* Therefore, no handling limitations related to Plaintiff's left hand were necessary. *See* 42 U.S.C. § 423(d)(3).

At step four, the ALJ began his RFC determination by noting that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 28). Without specifically mentioning carpal tunnel syndrome, the ALJ discussed reports of Plaintiff's normal grip strength. (R. 30, 31). He also discussed Plaintiff's ability to do activities of daily living including fixing meals, performing chores, cleaning the house, washing dishes, and doing laundry. (R. 29–30; *see* R. 82, 229–36, 310). However, the ALJ did not explicitly mention or consider the effects of Plaintiff's non-severe physical impairment of right-hand carpal tunnel syndrome in the RFC analysis. Consistent with the specified RFC, the ALJ also did not include handling limitations in any of the hypothetical questions posed to the VE. (*See* R. 62–68). The Court agrees the ALJ inadequately considered Plaintiff's non-severe impairment in the RFC assessment and did not explain if any work-related limitations resulted from Plaintiff's non-severe right-hand carpal tunnel syndrome. As a result, the ALJ omitted handling limitations from the RFC determination without explaining why Plaintiff's non-severe impairment did not impose any such limitations. Thus, the ALJ's determination is not supported by substantial evidence.

Nevertheless, "the ALJ's failure to consider a claimant's non-severe impairments when

14

assessing the RFC does not necessarily warrant remand if 'the evidence in [the] case does not support assessing any functional limitations from [the disregarded] impairments.'" *Janet K. C. v. Kijakazi*, No. 22-CV-111-JFJ, 2023 WL 3582540, at *4 (N.D. Okla. May 22, 2023) (quoting *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013)). The Court "may employ a harmless-error analysis sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings." *Alvey*, 536 F. App'x at 794 (citing *Wyo. v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006)).

In *Janet K. C.*, the court found the ALJ's step-four failure was not harmless error, as the record reflected "evidence of treatment for [the claimant's] non-severe physical impairments . . . , including medication management and manipulative therapy, as well as abnormal imaging and findings on physical examination." *Janet K. C.*, 2023 WL 3582540, at *4. Unlike *Janet K. C.*, there is no evidence of treatment such as therapy, surgery, or any testing to corroborate a diagnosis of carpal tunnel syndrome. The only possibly relevant evidence the Court identified was a record from Saint John Health System dated December 11, 2018, stating: "We'll offer follow-up with hand surgery in regards to what appears to be carpal tunnel syndrome of the right hand . . . ." (R. 318). However, as discussed by the ALJ, no further corroborative testing was done at the time and the Court has not identified any additional evidence of right-hand issues since. Thus, after a review of the entire record in this case, the Court finds the ALJ's failure to conduct a more particularized assessment of Plaintiff's non-severe impairment of right-hand carpal tunnel syndrome to constitute harmless error, as "[t]here is no substantial evidence that would allow a reasonable administrative factfinder to include any [physical] limitations in [Plaintiff's] RFC." *Alvey*, 536 F. App'x at 795 (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Lastly, because the ALJ presented a hypothetical question to the VE which included those

limitations adopted in the RFC (R. 28, 62–68), there is no error by the ALJ at step five. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment") (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)).

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 9th day of February, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT